IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| CARIBBEAN I OWNERS' ASSOCIATION, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CIVIL ACTION 07-0829-WS-B |
| GREAT AMERICAN INSURANCE COMPANY OF NEW YORK, *et al.*, | ) ) ) | |
| Defendants. | ) | |

**ORDER**

This action comes before the Court on Defendant XL Specialty's Motion to Dismiss Count II of Plaintiff's Complaint Pursuant to F.R.C.P. 12(b)(6) (doc. 12) and Plaintiff's Motion to Compel Appraisal and Stay Proceedings (doc. 28). Both Motions have been briefed and are ripe for disposition.[1]

**I.     Background.**

On November 28, 2007, plaintiff Carribean I Owners' Association, Inc. ("Caribbean I") filed its Complaint (doc. 1) in this District Court against defendants Great American Insurance Company of New York ("Great American") and XL Specialty Insurance Company ("XL Specialty"). The Complaint alleges that both Great American and XL Specialty issued insurance policies to Caribbean I, then breached the terms of those policies in handling claims by

---

[1] The parties' redundant submissions have made the Court's task more cumbersome than necessary. For example, as its opposition to XL Specialty's Motion to Dismiss, plaintiff filed both an 8-page Response (doc. 26) and a largely repetitive 12-page Brief in Support of Plaintiff's Response (doc. 27). Rather than submitting two separate documents that reiterate the same arguments nearly verbatim, counsel should submit a single integrated response. In a similar vein, with respect to briefing Plaintiff's Motion, Caribbean I opted to retread much of the same ground it had already covered in connection with XL Specialty's Motion. Such repetition impedes the Court's ability efficiently to decide the pending motions.

Caribbean I for property damage sustained during Hurricane Ivan in September 2004.[2] Caribbean I joins only two causes of action herein. First, the Complaint interposes a claim for breach of contract (Count I) alleging that Great American wrongfully failed and refused to honor Caribbean I's demand for appraisal in accordance with the terms of the Great American policy. Second, the Complaint contains an analogous breach of contract claim (Count II) alleging that XL Specialty likewise refused to participate in the appraisal process set forth in its applicable policy of insurance despite Caribbean I's timely and proper demand for same.

With respect to Count I, the Complaint alleges that Caribbean I's estimate of the wind-driven rain damage to its property differed from Great American's adjustment of the loss; indeed, the Complaint states that Great American "determined that the loss sustained as a result of covered peril was less than the amount of the deductible," on which basis it "den[ied] payment to Caribbean I." (Complaint, ¶ 13.) By contrast, Caribbean I submitted to Great American "an estimate of the cost to repair the building, which included costs related to alleged construction deficiencies from the original construction." (*Id.*, ¶ 11.) On August 2, 2007, the Complaint alleges, Caribbean I notified Great American of its disagreement as to the amount of the covered loss and demanded appraisal pursuant to the terms of the policy of insurance issued by Great American. (*Id.*, ¶ 14.) Despite this demand, Caribbean I maintains, Great American has refused to submit this dispute to appraisal, such that Caribbean I seeks an order from this Court requiring Great American to engage in the contractual appraisal process. (*Id.*, ¶¶ 15-17.)

The allegations in Count II with respect to the XL Specialty policy are materially similar to those in Count I with respect to the Great American policy. Once again, the moving force of that cause of action is the defendant insurer's alleged wrongful refusal to participate in the appraisal process delineated in its insurance policy. (*Id.*, ¶¶ 19-25.) Count II includes a specific allegation that Caribbean I presented XL Specialty with "an estimate of the cost to repair the building, which included costs which related to alleged construction deficiencies from the original construction." (*Id.*, ¶ 19.) Similar to Count I, the Complaint alleges that XL Specialty performed an adjustment and concluded that the covered loss was substantially lower than

---

[2] Although not identified in the Complaint, the subject property appears to be the Caribbean I condominium building located at 1057 West Beach Blvd., Gulf Shores, Alabama.

plaintiff's estimate.³  As with the Great American policy, Caribbean I alleges that it informed XL Specialty that it disagreed with the insurer's calculation of the amount of the covered loss and demanded appraisal on August 2, 2007.  (*Id.*, ¶ 22.)  The appraisal clause of the XL Specialty policy stated, in relevant part, as follows: "If You and We fail to agree as to the ***value of the property or amount of loss, damage or expense***, each may, on the written demand of either, select a competent and impartial appraiser, and the appraisal shall be made at a reasonable time and place. ... The appraisers shall then appraise the loss, stating separately the ***value at the time of loss and the amount of loss*** ...."  (*Id.* (emphasis added).)⁴

Both Count I and Count II contain materially identical *ad damnum* clauses specifying that plaintiff seeks the following: (a) insurance benefits in an amount in excess of $75,000.00, plus interest and costs, to be determined pursuant to the appraisal provision of the insurance policy; and (b) an order requiring the insurer defendant to participate in the appraisal process, with entry of judgment by the Court upon determination through appraisal of the amount of the covered loss.  (*Id.*, at 5, 7.)  Thus, it appears that the relief sought by plaintiff in this action is hinged on initiation of the appraisal process pursuant to both the Great American and the XL Specialty policies.  Specifically, plaintiff wants the amount of its covered losses to be fixed via appraisal with respect to both policies, and then to have judgment entered in its favor in those

---

³ That said, unlike Great American's complete denial of Caribbean I's claim as being below the applicable deductible amount, the Complaint states that XL Specialty determined that Caribbean I was due payment of $52,106.06 under its policy for a covered loss after taking into account the deductible.  (*Id.*, ¶ 21.)

⁴ To augment these skeletal facts outlined in the Complaint, the parties have submitted numerous exhibits with their briefs, as well as various factual allegations not contained in the Complaint.  Such materials are generally not properly considered at this nascent stage of the proceedings.  Indeed, it is well settled that "[a] court is generally limited to reviewing what is within the four corners of the complaint on a motion to dismiss."  *Bickley v. Caremark RX, Inc.*, 461 F.3d 1325, 1329 n.7 (11th Cir. 2006) (noting exception that documents referred to in complaint that are central to plaintiff's claims may also be considered on a Rule 12(b)(6) motion); *see also Financial Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007) (similar).  This Court's review of the parties' submissions proceeds in recognition of these principles.  Any exhibits or factual allegations that do not comport with the standards articulated in *Bickley* and *Financial Security Assurance* will be disregarded, except insofar as they are court filings from other actions pertaining to Caribbean I's judicial estoppel argument.

amounts.

## II.     Legal Standard.

On a motion to dismiss for failure to state a claim upon which relief can be granted, the Court must view the complaint in the light most favorable to the plaintiff. *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003). Thus, "when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, --- U.S. ----, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007). The rules of pleading require only that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(a)(2), Fed.R.Civ.P. While a complaint attacked by a Rule 12(b)(6) motion need not be buttressed by detailed factual allegations, the plaintiff's pleading obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, --- U.S. ----, 127 S.Ct. 1955, 1964-65, 167 L.Ed.2d 929 (2007). The rules of pleading do "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974; *see also Financial Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1282 (11th Cir. 2007) (explaining that "factual allegations in a complaint must possess enough heft to set forth a plausible entitlement to relief") (citation omitted). The Court's inquiry at this stage focuses on whether the challenged pleadings "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Erickson*, 127 S.Ct. at 2200 (quoting *Twombly*, 127 S.Ct. at 1964). Thus, the proper test is whether the complaint "contain[s] either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Financial Sec.*, 500 F.3d at 1282-83 (citation and internal quotations omitted).

## III.    Analysis of XL Specialty's Motion to Dismiss.

The singular legal issue presented by the Motion to Dismiss is whether submitting plaintiff's claims under the XL Specialty policy to the appraisal process would implicate issues of causation that the appraisers cannot decide, as a matter of settled Alabama law.[5]

---

[5] Plaintiff's Brief concerning this Motion becomes sidetracked by arguments that "XL Specialty waived any right to Examination Under Oath and additional documentation," that "XL Specialty is estopped from asserting any right to Examination Under Oath or solicitation of additional documents from Caribbean," and that XL Specialty has failed to demonstrate that

### A.   *The* **Rogers** *Decision.*

The Alabama Supreme Court recently had occasion to delineate the boundaries of insurance appraisers' role in *Rogers v. State Farm Fire and Cas. Co.*, --- So.2d ----, 2007 WL 2966694 (Ala. Oct. 12, 2007).  The *Rogers* plaintiffs made a claim on their homeowner's insurance policy after a tornado damaged their house.  The insurer's engineer concluded that certain damage to the property had been caused by a settling foundation, not the tornado, such that there was no coverage for that aspect of the damage.  The insurer made demand for appraisal, but the insureds declined to participate.  Ultimately, the trial court ordered the parties to participate in the appraisal process, prompting the insureds to argue on appeal that appraisal pursuant to an insurance policy sets only the amount of the property damage, without resolving issues of causation or coverage.  After canvassing the mixed case law from other jurisdictions on the subject, the *Rogers* Court concluded, in a matter of first impression, that "an appraiser's duty is limited to determining the 'amount of loss' – the monetary value of the property damage – and that appraisers are not vested with the authority to decide questions of coverage and liability; we thus adopt that holding as our rule of law.  Questions of coverage and liability should be decided only by the courts, not appraisers." *Id.* at *8.  Because the evidence in *Rogers* showed that the parties were not in agreement as to whether damage to the house's brick veneer and foundation was caused by the tornado (a covered event) or by the mere settling of the foundation (not a covered event), the *Rogers* Court opined that "[t]he determination of the causation of these

---

"Caribbean's alleged failure to submit a representative to Examination Under Oath and produce additional voluminous documents prejudiced" it.  (Doc. 27, at 6, 8-9.)  Thus, plaintiff labors under the impression that "XL Specialty wants this Court to dismiss Caribbean's breach of contract claim because it allegedly refused to submit its representative to an Examination Under Oath and failed to produce documents that were requested." (*Id.* at 8.)  Plaintiff is jousting with straw men.  XL Specialty does not argue in its Motion to Dismiss that Count II should be dismissed because plaintiff refused to submit to Examination Under Oath or to provide additional information; instead, the exclusive basis of the Motion to Dismiss is XL Specialty's contention that the appraisal process would necessarily encompass issues of causation that are within the exclusive purview of the courts (and not an appraiser) under Alabama law.  (*See* XL Specialty Brief (doc. 13), at 1, 4-6.)  Plaintiff's responsiveness or lack thereof to XL Specialty's information requests is not relevant to the Motion to Dismiss; therefore, sections III.B., III.C., and III.E. of plaintiff's Brief have no bearing on the legal questions presented in that Motion and will not be addressed herein.

matters is within the exclusive purview of the courts, not the appraisers." *Id.* at \*9.

### B.      *Plaintiff's Arguments.*

On its face, *Rogers* bodes ill for plaintiff's attempt to compel appraisal in this case, given the obvious need for a determination of the extent to which the damage to Caribbean I's property was caused by wind-driven rain or by pre-existing construction defects. Nonetheless, Caribbean I attempts to evade the debilitating effects of *Rogers* with a trilogy of arguments, to-wit: (1) that XL Specialty is judicially estopped from arguing that causation questions are not for the appraiser to decide; (2) that the appraisal provision is ambiguous and must be construed against XL Specialty, the drafter, to allow determination of issues of causation by the appraisal panel; and (3) that *Rogers* is otherwise distinguishable. None of these arguments is persuasive.

#### 1.      *Judicial Estoppel.*

Although both sides' briefs touch on the issue, no party presents authority for the elements of judicial estoppel or examines whether those elements are satisfied here. Because federal subject matter jurisdiction in this case is predicated solely on diversity jurisdiction, the Court looks to the Alabama's law of judicial estoppel. *See, e.g., Original Appalachian Artworks, Inc. v. S. Diamond Associates, Inc.*, 44 F.3d 925, 930 (11th Cir. 1995) ("Because this is a diversity case, the application of the doctrine of judicial estoppel is governed by state law."); *Sunbelt Cranes Const. and Hauling, Inc. v. Gulf Coast Erectors, Inc.*, 189 F. Supp.2d 1341, 1345 (M.D. Fla. 2002) ("In a diversity of citizenship action, state law governs the application of the doctrine of judicial estoppel.").[6] Pursuant to *Original Appalachian*, this Court will apply Alabama law to Caribbean I's allegations of judicial estoppel.

---

[6] The Court recognizes that the *Original Appalachian* ruling that state law applies to a claim of judicial estoppel is not unanimously shared by other federal appellate courts. *See, e.g., Jarrard v. CDI Telecommunications, Inc.*, 408 F.3d 905, 914 (7th Cir. 2005) ("Although Jarrard's complaint was founded on diversity jurisdiction, we apply federal (not Indiana) caselaw with respect to judicial estoppel."); *Helfand v. Gerson*, 105 F.3d 530, 534 (9th Cir. 1997) ("Federal law governs the application of judicial estoppel in federal court.") (citation omitted); *Allen v. Zurich Ins. Co.*, 667 F.2d 1162, 1167 n.4 (4th Cir. 1982) ("Although this is a diversity case, we consider that federal law controls the application of judicial estoppel, since it relates to protection of the integrity of the federal judicial process."). In any event, the outcome in this case would be identical irrespective of whether federal or Alabama law of judicial estoppel applied.

"The purpose of judicial estoppel is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment" or "from playing fast and loose with the courts." *Walden v. Hutchinson*, --- So.2d ----, 2007 WL 3318041, *8 (Ala. Nov. 9, 2007) (citations and internal quotation marks omitted). Judicial estoppel requires a showing of each of the following three elements: "(1) a party's later position must be clearly inconsistent with its earlier position; (2) the party must have been successful in the prior proceeding so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or second court was misled ...; and (3) the party seeking to assert an inconsistent position must derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Chapman Nursing Home, Inc. v. McDonald*, --- So.2d ----, 2007 3409013, *7 (Ala. Nov. 16, 2007) (citations and internal quotation marks omitted); *see also Ex parte First Alabama Bank*, 883 So.2d 1236, 1244-46 (Ala. 2003) (adopting same factors to join mainstream of judicial estoppel jurisprudence and overruling prior inconsistent precedent).

Caribbean I's argument is that, in an unrelated case styled *The Crown Pointe Condominium Owners Association, Inc. v. XL Specialty Insurance Company, et al.*, filed in the Circuit Court of Baldwin County, Alabama and bearing case number CV 05-1105, XL Specialty took a position in November 2005 that is contrary to its position in this lawsuit today. In particular, Caribbean I points to a passage from a Motion to Compel Appraisal in the *Crown Pointe* action wherein XL Specialty asserted that "[t]he dispute over the amount of loss caused by wind damage and the value of the property ... are both issues suitable for and contemplated by the appraisal process." (Doc. 27, Exh. C, at 7.) Significantly, Caribbean I was not a party to *Crown Pointe* and there is no indication that it was affected in the slightest by XL Specialty's Motion to Compel Appraisal in that action or the state court's ruling on same.[7] The state court in

---

[7] To be sure, both the case at bar and *Crown Pointe* involve allegations of damage to insured property on the Alabama Gulf Coast during Hurricane Ivan in September 2004. But the *Crown Pointe* property was located at 25588 Perdido Beach Boulevard in Orange Beach, Alabama, whereas the property at issue in this case is found at 1057 Beach Drive in Gulf Shores, Alabama. There is no evidence of any connection between the insureds in *Crown Pointe* and those in this case, and all appearances are that no such nexus exists. Thus, Caribbean I seeks to impose the draconian effects of judicial estoppel on XL Specialty based on the latter's stated

*Crown Pointe* granted XL Specialty's motion and compelled appraisal.  (Doc. 27, Exh. E.)

Based on the *Crown Pointe* filings, Caribbean I maintains that XL Specialty should be judicially estopped from arguing in this litigation that issues of causation are outside the realm of the appraisal process.[8]  If adopted, such an argument would expand the reach of the doctrine of judicial estoppel exponentially.  Plaintiff's position is apparently that once a party has taken a position in litigation, it is bound to that position for all time in all future litigation in which that entity may ever participate at any time, irrespective of any changes to controlling law or the party's circumstances in the interim.  The Court is aware of no authority - and plaintiff has certainly cited none - that would apply the doctrine so expansively.  Such an interpretation would contravene the equitable purposes that judicial estoppel was designed to promote by enabling an opportunistic party to foreclose entire lines of legal argument to its opponent based on statements that the opponent may have made in unrelated litigation years earlier, without regard to intervening changes in law or other reasonable, good-faith explanations for the change in position.  It would be manifestly inappropriate to exercise the Court's discretion to apply judicial estoppel in such a heavy-handed manner.  *See generally Zedner v. United States*, 547 U.S. 489, 126 S.Ct. 1976, 1987 (2006) (observing that judicial estoppel doctrine is equitable in nature); *Stephens v. Tolbert*, 471 F.3d 1173, 1177 (11th Cir. 2006) (recognizing that judicial estoppel "is an equitable doctrine invoked at a court's discretion"); *Snowden v. Fred's Stores of Tennessee, Inc.*, 419 F. Supp.2d 1367, 1370 (M.D. Ala. 2006) (declaring that courts must exercise caution in applying judicial estoppel because of harsh results attendant to precluding party from asserting position that would otherwise be available to it).

This conclusion is reinforced by examination of the criteria for judicial estoppel under Alabama law.  To be sure, the first two elements are satisfied.  XL Specialty's position in this

---

position more than two years ago in wholly unrelated state court litigation as to which Caribbean I is a total stranger.

[8]    Plaintiff also insists that the *Crown Pointe* pleadings render XL Specialty "judicially estopped in this case from claiming that the Appraisal Provision is elective rather than mandatory."  (Plaintiff's Brief (doc. 27), at 8.)  But XL Specialty makes no such argument in its Motion to Dismiss.  Once again, the Court rejects plaintiff's exhortations to strike down phantom arguments that XL Specialty has not made in its Rule 12(b)(6) motion.

litigation that causation issues cannot be submitted to the appraisal panel is clearly inconsistent with its evidently successful argument in the *Crown Pointe* litigation in 2005 that causation issues were suitable for the appraisal process.  But there is absolutely no basis for concluding that XL Specialty would derive an "unfair advantage" or impose an "unfair detriment" on Caribbean I in this case by diverging from its position in *Crown Pointe*.  Because Caribbean I was not a party to *Crown Pointe*, it could not have acquiesced in XL Specialty's position in that litigation, much less been prejudiced by the state court's ruling in that case.  Caribbean I would suffer no detriment by XL Specialty's change of position; rather, it is XL Specialty who would be harmed and Caribbean I who would derive an unfair advantage if XL Specialty were constrained to an antiquated, outdated position that it never took *vis a vis* Caribbean I in any legal proceeding at any time.  Moreover, XL Specialty has a compelling explanation for why its position on the causation issue differs here than in *Crown Pointe*, namely, that *Rogers* was not decided until October 2007.  Prior to *Rogers*, Alabama's appellate courts had not delineated the scope of an insurance appraiser's duties and powers to set the amount of loss under a homeowner's insurance policy's appraisal clause.  *See Rogers*, 2007 WL 2966694, at *6 (characterizing this issue as "a question of first impression" for the Alabama Supreme Court).  Far from making a mockery of the judicial process or constituting "shenanigans," as plaintiff puts it, XL Specialty's change of position in this case is directly tied to the emergence of controlling law in *Rogers*, whereas in the previous suit no such authority existed.  "Judicial estoppel should not be used to work an injustice ..., particularly when the defendants' change in position resulted from circumstances outside their control – namely, a change in controlling state law."  *Jarrard v. CDI Telecommunications, Inc.*, 408 F.3d 905, 915 (7th Cir. 2005).  The Court is fully satisfied that XL Specialty is not playing fast and loose with the judicial system and that no prejudice would befall Caribbean I by allowing XL Specialty to assert its *Rogers* defense to plaintiff's appraisal cause of action in this case.  Accordingly, plaintiff's estoppel objection to the Motion to Dismiss is **overruled**.

        2.      *Alleged Ambiguity of Appraisal Clause.*

Next, Caribbean I contends that the appraisal provision in the XL Specialty policy is ambiguous and should therefore be construed against the defendant insurer to allow causation and liability issues to be decided by the appraisers.

Under Alabama law, "[i]nsurance contracts are to be enforced as they are written, as long as there is no ambiguity in the provisions involved." *Progressive Specialty Ins. Co. v. Naramore*, 950 So.2d 1138, 1141 (Ala. 2006) (citations omitted); *see also Shrader v. Employers Mut. Cas. Co.*, 907 So.2d 1026, 1034 (Ala. 2005) ("If there is no ambiguity, courts must enforce insurance contracts as written and cannot defeat express provisions in a policy ... by making a new contract for the parties.") (citation omitted). "To the extent the language of an insurance policy provision is ambiguous, all ambiguities must be resolved against the insurance company." *Safeway Ins. Co. of Alabama, Inc. v. Herrera*, 912 So.2d 1140, 1143 (Ala. 2005). That said, however, ambiguities cannot be conjured from thin air by "strained or twisted reasoning" in interpreting policy language. *Id.* Furthermore, "the mere fact that a word or a phrase used in a provision in an insurance policy is not defined in the policy does not mean that the word or phrase is inherently ambiguous." *Id.* Rather, "[i]n determining whether the language of a contract is ambiguous, courts construe the words according to the interpretation ordinary men would place on the language used therein. ... The words are given the meaning that persons with a usual and ordinary understanding would place on" them. *Naramore*, 950 So.2d at 1141 (citations and internal quotations omitted); *see also Herrera*, 912 So.2d at 1143 (similar).

Caribbean I's position is that the appraisal clause in the XL Specialty policy is ambiguous because it does not expressly state that "liability and causation issues are not to be considered in the appraisal process." (Plaintiff's Brief (doc. 27), at 10.) Plaintiff is correct that the XL Specialty appraisal provision does not expressly forbid appraisers from deciding causation or liability; however, it does provide that the appraisal process is invoked where there is disagreement "as to the value of the property or amount of loss, damage or expense," and that the appraisers' task is to determine "the value at the time of loss and the amount of loss." (Complaint, ¶ 22.) Plaintiff insists that "amount of loss" is an ambiguous term with an embedded notion of causation. In so arguing, plaintiff casts its lot with the dissenting opinion in *Rogers*, wherein Justice Bolin (joined by Justice See) reasoned, based on a 2000 district court opinion from Delaware, that determining the "amount of loss" also included determining the

-10-

cause of the loss.  *See Rogers*, 2007 WL 2966694, at *10 (Bolin, J., dissenting).[9]

The problem with this argument is twofold.  First, the *Rogers* majority opinion supersedes and negates the dissent on this point, opining that "[w]e find no ambiguity in the term 'the amount of loss' as used in the appraisal clause in the Rogerses' homeowner's policy that would permit an appraisal to include questions of coverage and liability."  *Id.* at *8.  A majority of the Alabama Supreme Court having held as a matter of law just five months ago that the phrase "amount of loss" as used in an appraisal clause analogous to that at issue in this case is unambiguous, a finding of ambiguity by this Court would be a misapplication of Alabama law and would improperly elevate the *Rogers* dissent above the majority opinion.  Second, even setting aside *Rogers*, the Court is of the opinion that the phrase "amount of loss" as used in the appraisal provision could not be interpreted by a person of usual and ordinary understanding as meaning that the appraisers can decide liability or causation issues.  In common, ordinary parlance, "amount of loss" means the monetary value of property damage, irrespective of insurance coverage or source of damage.  Plaintiff would apparently conflate the term "amount of loss" with "amount of covered loss," but they are distinct.  More generally, causation and loss are two different things, and XL Specialty's failure expressly to exclude the former from the meaning of the latter does not reasonably create uncertainty as to the breadth of appraisers' authority.

Pursuant to both *Rogers* and the common, ordinary meaning of the term, the Court

---

[9] The *Rogers* dissent quoted extensively from *CIGNA Ins. Co. v. Didimoi Property Holdings, N.V.*, 110 F. Supp.2d 259 (D. Del. 2000), including such passages as "[t]he Court concludes that in the insurance context, an appraiser's assessment of the 'amount of loss' necessarily includes a determination of the cause of the loss."  *Rogers*, 2007 WL 2966694, at *10 (Bolin, J., dissenting) (quoting *Didimoi*, 110 F. Supp.2d at 264.)  *Didimoi* in turn relied heavily, as does Caribbean I in this case, on the definition of "amount of loss" set forth in the Sixth Edition of *Black's Law Dictionary*, which included a causation element.  But the "amount of loss" entry is omitted from the Seventh and Eighth Editions of *Black's Law Dictionary*, such that plaintiff is relying on a definition not found in the current edition of *Black's*.  In any event, although the large block quotations from *Didimoi* reflect that the Delaware decision was its predominant foundation, the *Rogers* dissent also cited a line of state-court decisions from Florida recognizing that appraisers may decide causation where the insurer admits that there is a covered loss but the parties disagree as to the amount of that covered loss.  The *Rogers* majority considered and declined to follow the Florida approach.

concludes as a matter of law that the term "amount of loss" is not ambiguous as to whether it encompasses liability, coverage and causation issues. It clearly does not. Because the XL Specialty policy allows insurance appraisers to determine only the amount of loss (*i.e.*, the monetary value of property damage), and because there is no ambiguity in the policy creating uncertainty as to whether that determination might include matters of causation or liability, the Court will not interpret the appraisal provision to allow appraisers to decide causation and liability.

### 3. *Whether* Rogers *Is Distinguishable.*

In the wake of *Rogers*, Alabama law is pellucidly clear that "appraisers are not vested with the authority to decide questions of coverage and liability" in insurance disputes. *Rogers*, 2007 WL 2966694, at *8. On its face, *Rogers* did not purport to limit this holding to the narrow circumstances of that case, but rather purported to be espousing a broad rule of Alabama law, without caveats or disclaimers. *See id.* ("we thus adopt that holding as our rule of law. Questions of coverage and liability should be decided only by the courts, not appraisers."). Notwithstanding the expansive wording of the *Rogers* holding, plaintiff seeks to limit it to the specific facts and circumstances of that case in three respects. None of these arguments have merit.[10]

First, Caribbean I would distinguish *Rogers* because the party seeking appraisal in that case was the insurer, whereas the party seeking appraisal here is the insured. Caribbean I maintains that "[t]his is a critical distinction because all ambiguities are construed against the drafter - XL Specialty." (Plaintiff's Brief (doc. 27), at 10.) If there were any ambiguities in the XL Specialty policy as to the scope of the appraisers' duty, then this contention might well be

---

[10] Tellingly, Caribbean I does not assert, and has never asserted in these proceedings, that if the appraisal process went forward in this case, the appraisers would not be faced with issues of causation and liability. To the contrary, plaintiff admits in its Complaint that its repair estimates for the covered property "included costs which related to alleged construction deficiencies from the original construction." (Complaint, ¶ 19.) Thus, even taken in the light most favorable to the plaintiff, the allegations of the Complaint reflect that the parties' dispute turns, at least in part, on allocation of property damage among various covered (*i.e.,* wind-driven rain) and uncovered (*i.e.*, construction deficiencies) causes. It is undisputed that any appraisal process undertaken in this case would necessarily involve causation/liability determinations, rather than simply deciding the monetary value of plaintiff's property damage.

persuasive. But the Court has already found, based on the language of *Rogers* itself as well as the Alabama legal standard for interpreting insurance policies, that no such ambiguities exist. Because the appraisal clause is not ambiguous, as a matter of law, it makes no difference whether the insurer or the insured is invoking it in this particular case. Either way, causation and liability determinations are beyond the realm of the appraisers' authority.

Second, plaintiff would distinguish *Rogers* because the XL Specialty policy included a phrase "amount of loss, damage or expense," which (according to plaintiff) incorporates issues of causation. However, there is no meaningful difference between the phrase "amount of loss" in the *Rogers* appraisal provision and the phrase "amount of loss, damage or expense" in the XL Specialty policy. If the *Rogers* phrase could not be fairly construed as authorizing the appraisers to decide causation and liability, then the XL Specialty phrase cannot either. This alleged "distinction" advocated by Caribbean I simply does not exist. Third, plaintiff would attempt to distinguish *Rogers* based on the same failed judicial estoppel notion addressed in Section III.B.1., *supra*. For the reasons stated previously, this argument fails.

    *4. Implications.*

The upshot of this analysis is that Caribbean I is not entitled to invoke the appraisal process set forth in XL Specialty's policy because any appraisal performed in this case would entail determinations of causation and liability that lie within the sole purview of the courts, not insurance appraisers, as a matter of settled Alabama law. The allegations of the Complaint simply cannot support application of the appraisal process here; therefore, XL Specialty's Motion to Dismiss is due to be **granted** insofar as Count II seeks appraisal-related relief. This ruling has profound implications for the course of this litigation in several respects.

As an initial matter, Plaintiff's Motion to Compel Appraisal and Stay Proceedings (doc. 28) is plainly due to be **denied**. Review of that Motion reveals that it is predicated on the same failed notions of judicial estoppel and inapplicability of *Rogers* that Caribbean I unsuccessfully asserted with respect to XL Specialty's Motion to Dismiss. The reasoning articulated in this Order is fatal to plaintiff's request that this Court compel appraisal by either XL Specialty or Great American at this time, and stay proceedings in the interim; therefore, that request will be denied without further ado.

Furthermore, as noted *supra*, the Complaint purports to state nearly identical breach of

contract claims against both XL Specialty and Great American for failure to participate in the appraisal process despite due demand by Caribbean I for same.  Great American did not file a Rule 12(b)(6) motion concerning the claim against it on *Rogers* grounds; however, the parties' briefing of Plaintiffs' Motion to Compel Appraisal and Stay Proceedings (doc. 28) suggests that Great American is situated identically to XL Specialty and that there is no material difference between plaintiffs' appraisal claims against each of them.  The Court's authority to dismiss a claim *sua sponte* for lack of merit in the non-prisoner setting is not unlimited.  *See American United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1057, 1069 (11th Cir. 2007); *Jefferson Fourteenth Associates v. Wometco de Puerto Rico, Inc.*, 695 F.2d 524, 526 (11th Cir. 1983) ("courts exercise their inherent power to dismiss a suit that lacks merit only when the party who brought the case has been given notice and an opportunity to respond").  Therefore, the Court will not unilaterally dismiss Count I of the Complaint in favor of defendant Great American absent notice and an opportunity to be heard by plaintiff, where Great American has neglected to file a Rule 12(b)(6) motion of its own.  Plaintiff is therefore **ordered**, on or before **March 20, 2008**, to **show cause** why its appraisal-related claims against Great American should not be dismissed for the same reasons that its claims against XL Specialty have been dismissed.[11]  If no timely response is received, the Court will promptly dismiss plaintiff's appraisal-related claims against Great American for the same reasons identified herein with respect to XL Specialty.

Finally, the Court notes that it is unclear whether any aspect of the Complaint would survive the dismissal of Caribbean I's appraisal-related claims.  The Complaint is not a model of clarity in this regard.  Count II, the breach of contract claim against XL Specialty, focuses on the appraisal issue, but also includes a vague allegation that "[t]he failure of XL Specialty to properly adjust the loss and pay benefits due is a breach of contract." (Complaint, ¶ 25.)  Does this mean that Caribbean I intends for its breach of contract claim against XL Specialty to

---

[11] The Court is not interested in a rehash of arguments previously made and rejected by Caribbean I on the XL Specialty appraisal issue; rather, this show cause order is intended to afford plaintiff an opportunity to explain why the analysis should be different with respect to the Great American appraisal claim than with respect to the XL Specialty claim.  If plaintiff believes that the appraisal issue is substantively identical for Great American and for XL Specialty, then it need merely so inform the Court, along with making whatever statement it deems necessary to preserve its arguments for appeal purposes.

embrace claims-handling issues other than XL Specialty's refusal to participate in the appraisal process? From the equivocal and indefinite nature of the Complaint on this point, the Court simply cannot discern plaintiff's intentions. The same question applies to Count I, the breach of contract claim against Great American. Under the circumstances, the most efficient procedure, and the one ordered by this Court, is as follows: To the extent that plaintiff intended to limit this action to claims for breach of contract relating to defendants' failure and refusal to participate in the appraisal process, it must file a notice to that effect on or before **March 27, 2008**. To the extent, however, that plaintiff seeks to bring breach of contract claims against defendants in these proceedings, separate and apart from their refusal of plaintiff's appraisal demands, it is **ordered**, on or before **March 27, 2008**, to file an amended complaint that identifies those claims with sufficient specificity to comport with pleading requirements of the Federal Rules of Civil Procedure.

## IV. Conclusion.

For all of the foregoing reasons, it is hereby **ordered** as follows:

1. Defendant XL Specialty's Motion to Dismiss (doc. 12) is **granted**, and all appraisal-related claims asserted against XL Specialty in the Complaint are **dismissed with prejudice**;

2. Plaintiff's Motion to Compel Appraisal and Stay Proceedings (doc. 28) is **denied**;

3. Plaintiff is **ordered**, on or before **March 20, 2008**, to **show cause** why its appraisal-related claims against Great American should not be dismissed for the same reasons that its claims against XL Specialty have been dismissed; and

4. Plaintiff is **ordered**, on or before **March 27, 2008**, either to file an amended complaint specifying its non-appraisal related claims against defendants or to file a notice informing the Court that it intends to limits its claims in this action to causes of action for defendants' refusal to participate in the appraisal process.

DONE and ORDERED this 10th day of March, 2008.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE